v. WMATA, and Paul J. Whitefeld, in his official capacity as General Manager of the Washington Metropolitan Area Transit Authority. Mr. Bekesha, for the appellants. Mr. Shaw, for the appellees. Thank you. Mr. Bekesha, when you're ready. Good morning. May it please the Court, Michael Bekesha, on behalf of Appellant Unsuck DC Metro. Washington Metropolitan Transit Authority asks this Court to drastically rewrite the Deliberative Process Privilege. Instead of a privilege protecting debate and candid discussion of agency decision makers, WMATA seeks a privilege to withhold information that may generate other information that then may be used as part of a decision-making process. This Court has never held such information is protected and it shouldn't do so today. There is no dispute that Unsuck DC Metro did not request the results of the survey questions or the analysis of the survey questions. It only asked for the survey questions. Questions that were asked of members of the public that were not sworn to secrecy or asked not to disclose. Questions that according to the or excuse me, agency decision makers to make any decision whatsoever. WMATA concedes this. Before we get to the merits, I have a jurisdictional question. So, Unsuck says that our jurisdiction here is based on Section 81 of the Compact, but that only provides for general jurisdiction against actions, you know, against WMATA. It what private rights of action a private, you know, a party may have against WMATA. The Compact doesn't appear to give any rights to obtain documents and so the PARP is just a policy statement of WMATA and it has a judicial review provision, but usually a regulation standing alone can't confer a private right of action, right? Per Alexander V. Sandoval in the Supreme Court. So, I guess where does the private right of action come from here? Yes, Your Honor. We think that's an extremely interesting question. At the district court, we brought several claims up in the alternative because we are concerned for that very reason. And both WMATA and the district court found that the court had jurisdiction. It would have been weird for us to appeal, not even sure we would have been able to appeal that question. And so, at this point, we have just- May I interrupt you? I don't know that this is necessarily a jurisdictional question. It's like Govey Hood. Are you familiar with the Supreme Court's opinion in that case? I am not, Your Honor. Okay. Well, I won't get into the detail, but there's a difference between a cause of action and a court having jurisdiction. And I think what Judge Rao is asking is not a jurisdictional question as such, but it's really a cause of action question. And I am just as confused about that as Judge Rao is. Where does that come from? Where do you get the right to sue for the kind of relief you're seeking? Sure. We believe it's found partly in the compact, the compact that was approved by Congress that says claims can be brought both in state or in federal court. And then the compact indicates that rules and regulations may be passed as necessary. And WMATA has done so when it comes to seeking of public records. And so, we think the compact provides that cause of action to the extent it does. Again, we had questions the same about whether or not there was a private right to action, whether or not there was a cause of action. We thought it may have even been a jurisdictional issue because is there something like a federal question? It's not FOIA where there's a statute, and that's why we brought several claims in the alternative. The court found that there was a cause of action. Other district courts have found that there were causes of action. WMATA does not object. WMATA stood up and- None of those things tell us where the cause of action comes from still. I mean, the fact that the district court found one and WMATA has not raised this argument, we still need to locate the cause of action somewhere. And I'm not sure where that cause of action comes from here. Yes, Your Honor. Unfortunately, as I said, we didn't brief this issue. And so, if the court would like additional information, I'd be more than happy to provide it after the fact, but- Well, we're on the subject before we... I want to give you some time to get your affirmative argument in. And looking at this policy here, a couple of things strike me. The policy in the appendix was not in effect when you made your request. So, I don't know what policy was in effect when your request was made. Your request was made in 2018, as I recall, and this policy didn't go into effect until 2019. That's number one. Number two, I have no idea where WMATA gets the idea as set forth in this policy, in policy number nine, 9.3 or whatever it is, that it can decide what the federal courts can do and cannot in terms of the cause of action. I mean, where's WMATA get the authority to do that? A federal agency couldn't do that. And then the other thing is that the, I think, policy number 12 says that at least the one in the appendix doesn't apply retroactively. Can you answer any one of those questions? Let me tell you that these, I think, are more appropriately addressed to WMATA, but I just wanted to see whether you had any thoughts. Thank you, your honor. I would have to take a closer look. Unfortunately, I don't have an answer about the timing of the policy. It may have just been an error on our part of pulling the wrong policy and putting it, but it's my understanding from WMATA that the PARP section, nothing has changed, that what we're talking about has the same provisions. So it may have just been updated. I just don't have an answer to that. Again, with respect to the other two questions, the UNSOC DC Metro had these concerns about what gave WMATA the authority to allow the federal courts to hear these types of cases. That is why we brought several claims in the alternative at the district court. We brought claims under the common law as well as the APA, because we believe there was a, it was highly likely that the federal courts didn't have the ability to hear a PARP claim. Mr. Bekesha, do you renew your APA claim on appeal or have you, I mean, do you still, do you renew that claim on appeal, the APA claim? We don't, your honor. So that's not before us, the APA claim. Correct, your honor. We only appealed, the court dismissed, on a motion to dismiss, the court dismissed our claims in the alternative and granted summary judgment on the PARP claim. We only appealed the summary judgment ruling, your honor. So you are correct there, which is why none of this is addressed in our briefs, your honor. I think it's a, it's a difficult question whether WMATA would be subject to the APA, but that question, as you say, is not before us. We think it's an open question that the courts haven't resolved and unfortunately it isn't before this court today. Same with some of our other claims regarding the first amendment right. Well, it really raises all kinds of questions. These policy statement, paragraph after paragraph, were they subjected to notice and comment rulemaking? I don't know, your honor. I imagine WMATA would have a, be able to answer those questions for you. You know, what my client is concerned about and was concerned about when we brought the complaint was to the extent PARP doesn't apply, WMATA receives millions, hundreds of millions of dollars from the federal government and from the states. And if PARP cannot be enforced, um, there is no accountability. There is no transparency when it comes to WMATA. And, um, my client believes that's a big concern. It's part of why we brought these alternative claims. And, um, I know those aren't before you now. And unfortunately I don't have a lot of these answers because it is WMATA not UNSUCC DC Metro that, um, has really been advocating, but these PARP claims are proper in the federal courts. Okay. I see my, I see my time is up. Um, I'm happy to talk about, um, the merits of the summary judgment brief, but, um, based on these questions, I'm not sure, um, if the court wants to hear them or not. So I guess I'll reserve time, uh, to respond afterwards. Judge Randolph, any further questions? Uh, no, not at the moment. Thank you. Mr. Shah. Thank you, your honors. Uh, may it please the court, Pateek Shah for the appellees. I'm happy to address some of the, uh, threshold questions. Um, if this court would like, uh, as, as, as, uh, my friend on the other side stated, WMATA did not object, um, on the ground that there was no cause of action. I don't think there's any question that the federal court has pursuant to section 81 of the compact. I think it does afford, uh, this court, uh, the district court and this court jurisdiction to hear any claims that are brought against, uh, WMATA. I do think there is a question, uh, that you raise about the, the cause of action. Uh, WMATA has always viewed the cause of action as arising from section 9.31 of the PARP policy. And that's at page 90. And that section says, uh, it's under the judicial review, uh, provision that section says the requester may bring a civil action only for injunctive relief or declaratory judgment. Nothing in this policy shall be construed to authorize any civil action for damages. Mr. Shah, I mean, under Alexander v. Sandoval, a regulation can't create a cause of action where there isn't one in the underlying statute. So I don't see any cause of action created by the compact if we're going to analogize the compact to a statute. So is your view that WMATA has more ability to create a cause of action than a federal agency with delegated rulemaking authority? Well, Your Honor, this is what, uh, WMATA's policy has said. It, its intent has always been to afford a forum to members of the public if they disagreed with a decision in, in that. Now, if this court obviously finds as a matter of law that WMATA can't do that or that it would exceed a federal court's authority to recognize, uh, a cause of action, then, then the court obviously has authority to find that. And, and a plaintiff could not in fact, uh, seek relief in the federal court, um, under that provision. Would you, would you tell us how these, these policies, uh, come into being? Uh, I don't have, I know that they were first enacted in, uh, 2000, I believe. So Your Honor. When you say enacted, what do you mean by enacted? Uh, they were promulgated by WMATA. WMATA is obviously, its position is it's not subject to the APA. I don't know when it was, uh, enacted, whether there was some form of notice and comment outside of the APA that WMATA subjected this to, I just don't have the... Does Virginia DC and Maryland all have to approve this? It says in the copy we have that the approval was done by a manager. Yes, Your Honor. So it was finally approved there, but this, as you noted, was what was the kind of is in 2000 when it was originally promulgated, what sort of process it was put through? It could be. Well, the, the, in the lower left-hand corner of, uh, of the page, that's page 90. It's every page, but it's approved by somebody whose name I can't read because the lights aren't so good here, but it doesn't say it was approved by DC, Maryland, Virginia. It's just the manager. Yes, Your Honor. And I, I just don't know when the original, uh, part policy was promulgated, what the exact process was at that point. Um, so I can't speak to that. But what about the policy that was in effect when this request came in, in 2018? We don't have that in front of us either. Your Honor, it's not included in the JA that the other side put together the JA. I think they probably just pulled the one from the website that had this date. None of the provisions that are material in this case, my understanding, were any different in 2018 than they were in 2019, uh, when, when the suit was brought. Why, why, why then promulgate new ones? There may, there may have been other changes, Your Honor, that aren't, that aren't at issue in this case, but in terms of the exemption, uh, the 6.15 exemption, that's, that's always been, uh, part of the part policy. Mr. Shaw, so if we just assuming for a moment that there is a cause of action, I guess I'm wondering why a survey question standing alone would be covered by a deliberative privilege. And so I was thinking of an analogy, I mean, the context of other agencies, other federal agencies, um, when they do information collections from the public, right, their surveys or their forms have to go through the Paperwork Reduction Act, which involves subjecting those forms to, you know, a form of notice and comment. Um, so, you know, if the PARP is sort of incorporating FOIA, I understand it's not incorporating the Paperwork Reduction Act, but I think it would be very unusual for survey questions from other federal agencies to be covered by a deliberative privilege because of this other statutory regime that requires them to be made public and to ensure the public is notified and given a chance to comment. So I'm not suggesting WMATA is covered by the Paperwork Reduction Act, but I do think it suggests that something like questions standing alone wouldn't be part of something protected by a deliberative process. Judge Rao, if in fact questions were subject to some public notice and comment and they were published out there, it wouldn't be protected by FOIA, but that would be for a different reason than what we have here. That's because the questions would be part of the public domain. And this court has a bunch of case law on disclosures in the public domain. The other side has not made that argument, and that's because these questions are not, in fact, in the public domain. And there are cases that set forth the test for the public domain. Is it captured in a permanent public record? Obviously, here we know on the facts here on the declaration, it's undisputed that these questions were not disseminated broadly. They were targeted to a select number of WMATA customers, and WMATA took special precautions to make sure they were not, in fact, publicly disclosed beyond that. They provided these copy and paste it from a website and disseminate it, or through a closed email link. And that closed email link was targeted to a particular individual. If you forwarded it to someone, it wouldn't work. And even if you clicked on it, the questions would come one by one. So this was all done in a way that was tailored to minimize any public disclosure. I agree with you, Judge Rao, if you had a case where the questions were published in public, under that public domain doctrine, you wouldn't have that. But here, there's no doubt that the within the meaning of that test. I guess my question is not just about the fact that they would be made public. It's just that things that are surveyed to the public are not ordinarily thought of as part of what we consider part of a deliberative process, like within an agency or between agencies. Well, Your Honor, I guess I wouldn't think of this as kind of a broad public survey. This is a targeted customer satisfaction survey that's part and parcel. And this is undisputed through WMATA's declaration. This is a core part of how they make policy in WMATA to improve the transit operations. And so this is not some broadly disseminated survey. If you wanted to have an analogy, Judge Rao, I would analogize this more to a targeted focus group that you might bring in to aid your policymaking process. That's the way in which WMATA uses these questions. It's part of their policymaking process that they go through to decide are there particular areas that they can improve as a transit agency. There's no doubt that it satisfies the test that this court has set forth. It's part of the deliberative process. In fact, it delineates the topics on which input is solicited upon which then WMATA can make its decisions with respect to transit operations. So I think both prongs are amply satisfied here as the district court found below. If we were further interested in this question about the cause of action, do you think we would need additional briefing on that question? Yes, Your Honor. It wasn't briefed either in the district court or in front of the Court of Appeals. WMATA has always proceeded pursuant to its policy. And so yes, I do think if you were interested in that cause of action question, it would benefit from briefing. If there are no further questions, I see that I'm coming to the end of my time. Judge Randolph? No. Mr. Bekesha, we'll give you two more minutes. Thank you, Your Honor. The deliberate process privilege, the purpose of it that this court and almost every other court has found is to prevent the chilling of candidate advice. We just don't believe that questions asked to the public would chill candidate advice in the future. Just hypothetically, if one of the questions is, do you ride the Metro? If that question is, then that piece of paper, if there's a piece of paper given to the WMATA general manager that do you ride the Metro? How does that help his decision in any way? What if the question is, on a scale of one to 10, how clean is the Metro? How does that provide any information whatsoever to decision makers? And so what we have here aren't the culling of factual information. We don't have picking and choosing what information is being used and what information isn't being used. What we have here are just survey questions. I've litigated a lot of deliberate process cases over the past 11 years, and I've lost quite a few of them. And this one just doesn't seem to fit into the criteria that the courts use when looking at information that is deliberative and needs to be protected. These are just very different. WMATA lists a bunch of reasons why the information needs to be disclosed, a lot of potential harms it may have. However, none of those harms are the chilling of candidate advice or discussions. There are other reasons that don't fall within the deliberative process. And for that reason, we do not believe the deliberative process applies. Okay. Thank you. Mr. Kasha. Case is submitted.
judges: Garland, Rao, Randolph